IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

FILED

98 AUG 20 PM 1:21

U.S. DISTRICT COURT
N.D. OF ALABAMA

MICHAEL WILLIAMS, et al.,        }
                                 }
      Plaintiffs                 }
                                 }      CIVIL ACTION NO.
      vs.                        }
                                 }      CV-96-AR-3114-S        *Cho*
DRUMMOND COMPANY, INC., et       }
al.,                             }
                                 }
      Defendants

ENTERED

AUG 2 0 1998

MEMORANDUM OPINION

Presently before the court are three motions: 1) a summary

judgment motion by defendant Drummond Company, Inc. ("Drummond"),

2) a summary judgment motion by defendants United Mine Workers of

America and United Mine Workers Local 5986 ("hereinafter

collectively referred to as "Union"), and 3) a motion to dismiss

by the Union.  Plaintiffs, who are members of the Union, are

suing defendants for fraud and suppression, pursuant to Alabama

state law.  Plaintiffs also assert that the Union engaged in

common law conspiracy and that it breached its duty of fair

representation.  *See Breininger v. Sheet Metal Workers Local 6,*

493 U.S. 67, 110 S. Ct. 424 (1989); *Doc. 48,* Fourth Amended

Compl.  The court agrees with defendants' contention that

plaintiffs' state law claims are preempted by federal law and

therefore must be dismissed.  In addition, summary judgment is

appropriate on plaintiffs' duty of fair representation claim.

67

## I. SUMMARY JUDGMENT STANDARD

Under the Federal Rules of Civil Procedure, summary judgment
is appropriate where "there is no genuine issue as to any
material fact and ... the moving party is entitled to a judgment
as a matter of law."  F.R.Civ.P. 56(c).


## II. FACTS

Plaintiffs are former employees of Mulga Coal Company
("Mulga") which was purchased by Drummond in September 1982.
When Mulga reduced its work force in October 1982 and ceased
operations in March 1983, its former employees indicated that
they wanted to be placed on Drummond's "panels" or re-call lists.
*Doc.* 61, Ex. A at pg. 3.


Drummond believed that laid-off Mulga employees were not
entitled to appear on panels for any of Drummond's wholly-owned
subsidiaries or affiliates because the laid-off workers were not
employees of Drummond.  As a result of this position the Union
filed a grievance.  On October 12, 1983, an arbitrator denied the
grievance, finding that the employees' collective bargaining
agreement did not provide them with panel rights at non-Mulga
mines.  *Id.* at pg. 9.  Despite the relationship between Drummond
and Mulga, the arbitrator found that the laid-off workers were
not employees of Drummond and therefore they had no panel rights

2

at any mine except Mulga, which had closed. *Id.*

In 1987 the Union entered into an agreement or "memorandum of understanding" ("1987 MOU") with Drummond that gave the former Mulga employees panel rights at Drummond owned and operated mines. *See Doc.* 61, Ex. B. This agreement gave the former Mulga employees panel rights, but only after Drummond exhausted its own panels. In addition, the agreement specified that once the Mulga employees were hired by Drummond, they would receive seniority rights for the calculation of "contractual benefits" only. Initially, the 1987 MOU indicated that the former Mulga workers were being "recalled" to a position at Drummond. However, consistent with Drummond's position that the former Mulga workers were not Drummond employees, the parties changed the word "recalled" to "called." *See id.*

Drummond opened a new mine in 1992 and by 1995 realized it would need to call employees from the Mulga panel list. In anticipation of hiring the Mulga workers, Drummond and the Union entered into a second MOU ("1995 MOU"). The 1995 MOU specifically provided that the employees' date-of-hire at Mulga would not carry over to their employment with Drummond, for purposes of establishing seniority. *Doc.* 61, Ex. C at ¶ 3(B) ("Mulga service will not be considered Drummond service for any

3

and all other provisions of the 1993 UMWA Drummond Wage Agreement, including Article XVII."); *Doc.* 55, Carder Dep. Ex. 1C at pg. 116 (indicating that Section XVII of the collective bargaining agreement relates to seniority).

There is no evidence that plaintiffs received a copy of the 1995 MOU. *See* Doc. 61, Ex. Footnote 1 at pg. 19. Instead, the Union disseminated the 1995 MOU to local Union presidents; although there is no evidence that the presidents actually posted the MOU. *Doc. 64*, Ex. 3 at pg. 28. During negotiations, defendants agreed that Drummond would notify the former Mulga workers of their recall and seniority rights under the 1996 MOU. *Doc. 61*, Ex. 3 at pp. 59 - 60. As a result of this arrangement, Drummond sent plaintiffs a letter containing the following language:

> Based upon completed Panel forms, Mulga seniority date, and current qualifications Mulga employees will:
>
> ***
>
> 2.) Establish a seniority date for purpose [sic] of article XVII with Drummond Co. Inc. upon employment. Mulga seniority will be recognized as Drummond Seniority for purposes of Article IX Allowances, Article XI Accident and Sickness waiting periods and eligibility, Article XIII Regular Vacation, Article XIV Graduated Vacation and Article XYZ Health and Retirement Benefits, as it relates to the Dental Plan eligibility waiting period.

*Doc.* 61, Ex. D. Although Drummond was aware that the Mulga

workers believed the seniority issue was still unresolved, *See Doc. 61,* Ex. 5 at pp. 29 - 31, the letter it sent to the Mulga workers failed to include the more explicit language found in the 1995 MOU: "Mulga service will not be considered Drummond service for any and all other provisions of the 1993 UMWA Drummond Wage Agreement, including Article XVII." *See Doc.* 61, Ex. C at ¶ 3(B). Plaintiffs claim that by failing to include the 1995 MOU's more explicit language in the letter Drummond sent to the former Mulga workers, defendants misrepresented the terms of plaintiffs' employment. Relying upon this alleged misrepresentation, plaintiffs resigned from other jobs believing they would receive their Mulga seniority once they began employment with Drummond. *Doc.* 61, Ex. Footnote 1 at pp. 12, 15, 17. Plaintiffs did not discover the truth about their seniority rights until they reported to work at the new mine. The Union apparently filed a grievance over the seniority dispute sometime in late 1996, *Doc.* 64, Ex. 2 at pp. 106 - 108, but it eventually decided not to pursue the matter because the Union's attorney did not believe the Union could prevail. *Id.* at pg. 109; *Doc.* 64, Ex.6 at pp. 82 - 84.

### III. SECTION 301 PREEMPTION

Defendants contend that plaintiffs' claims are preempted under § 301 of the Labor Management Relations Act which requires

application of federal law when interpreting and enforcing

collective bargaining agreements. 29 U.S.C. § 185(a). *See*

Patrick Hardin, *The Developing Labor Law* at pg. 1698 - 99 (3rd.

ed. 1992). Section 301 preemption may apply even where the

plaintiff, as in the present case, asserts non-contract state law

claims such as fraud and conspiracy.

> [I]f the resolution of a state-law claim depends
> upon the meaning of a collective-bargaining
> agreement ["CBA"], the application of state law
> (which might lead to inconsistent results since
> there could be as many state-law principles as
> there are States) is pre-empted and federal
> labor-law principles--necessarily uniform
> throughout the Nation--must be employed to resolve
> the dispute.

*Lingle v. Norge Division of Magis Chef, Inc.*, 486 U.S. 399, 400

6, 108 S. Ct. 1878, 1881 (1988) (citations omitted). It is

important to note, however, that "not every dispute concerning

employment, or tangentially involving a provision of a

collective-bargaining agreement is preempted by § 301 ...."

*Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 211, 105 S. Ct.

1904, 1911 (1985). Preemption is only appropriate where

evaluation of the state law claim is "inextricably intertwined

with consideration of the terms of the labor contract." *Id.* at

219, 105 S. Ct. 1912. When this standard is met, the court must

treat a plaintiff's claim as a § 301 claim for breach of contract

or the court must dismiss the claim as preempted. *See id.* at 220

- 221, 105 S. Ct. at 1916; *Parker v. Connors Steel Co.*, 855 F.2d 1510, 1519 (11th Cir. 1988) (discussing the nature of a § 301 claim) (citation omitted), *cert. denied*, 490 U.S. 1066, 109 S. Ct. 2066 (1989).

## IV. PLAINTIFFS' CLAIMS AGAINST DRUMMOND ARE PREEMPTED BY § 301

"In determining whether plaintiffs' state law tort claims require interpretation of the terms of the CBA, [the court] must look to the elements of each challenged state law claim." *Peterson v. BMI Refractories*, 132 F.3d 1405, 1412 (11th Cir. 1998). "The elements of a fraud claim are: (1) a mis-representation of a material fact [by the defendant]; (2) made willfully to deceive or recklessly without knowledge; (3) which was justifiably relied upon by the plaintiff under the circumstances; and (4) which caused damage as a proximate consequence." *Gonzalez v. Blue Cross/Blue Shield of Alabama*, 689 So. 2d 812, 821 (Ala. 1997) (alterations in original & citations omitted). Determining whether defendants committed fraud first involves interpreting the 1995 MOU to ascertain what seniority rights the former Mulga workers were entitled to receive. Then the fact finder must interpret the Drummond letter to determine if it constituted a material misrepresentation regarding plaintiffs' seniority rights as described in the 1995 MOU. Even

7

for those unfamiliar with collective bargaining terminology,

interpreting the seniority provisions found in the 1995 MOU is

not a complex task. Nonetheless, the fact finder must determine

"what the parties to the labor agreement agreed." *See Lueck*, 471

U.S. at 211, 105 S. Ct. at 1911. In other words, the fact finder

must <u>interpret</u> the agreement. Such a process, although not

complex, is "inextricably intertwined with consideration of the

terms of the labor contract." *See id.* at 219, 105 S. Ct. at

1912.


The same is true for plaintiffs' suppression claim. "To

support a claim alleging suppression of a material fact, a

plaintiff must show: (1) that the defendant suppressed a material

fact, (2) that the defendant had a duty to communicate that

material fact, either because of a confidential relationship

between the parties, or because of the particular circumstances

of the case, and (3) that the plaintiff suffered actual injury as

a result of the suppression. § 6-5-102, Ala. Code 1975." *Spooner*

*v. State Farm Mut. Auto. Ins. Co.*, 709 So. 2d 1157, 1160 (Ala.

1998)(some citations omitted). Again, analysis of the state law

claim involves consideration of what material facts defendants

allegedly suppressed. As described above, this analysis requires

interpretation of the 1995 MOU seniority provision.

Finally, plaintiffs' conspiracy claim also requires interpretation of the 1995 MOU. The Alabama Supreme Court defines conspiracy "as a combination to accomplish an unlawful end or to accomplish a lawful end by unlawful means." *Stuart Constr. Co., Inc. v. Vulcan Life Ins. Co.*, 285 So. 2d 920 (Ala. 1973). Here, the unlawful end or unlawful means must be established by evidence of fraud and suppression, thereby necessarily interpreting the 1995 MOU.

Plaintiffs attempt to counter this analysis by arguing they are not challenging defendants' interpretation of the 1995 MOU seniority provision. Instead, they challenge defendants' alleged misrepresentation regarding seniority rights. Because there is no dispute regarding the meaning of the seniority provision, plaintiffs argue that evaluation of their claims is not "inextricably intertwined" with an "interpretation" of the 1995 MOU. In support of this argument, plaintiffs cite to *Lividas v. Bradshaw*, 512 U.S. 107, 108, 114 S. Ct. 2068, 2078 (1994), in which the Supreme Court explained: "when the meaning of contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished ...." (citation omitted).

This language does not compel a finding in favor of plaintiffs. When the *Lividas* court referred to an absence of dispute regarding contract terms, it cited to a footnote in *Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. at 412, 108 S. Ct. at 1885 n. 12. In that footnote, the Court gave an example of a situation where federal law could govern interpretation of a CBA without preempting state law claims. Where, for example, the state-law analysis "does not turn on the agreement," but calculation of damages depends upon provisions in the CBA, the underlying state-law claim is not preempted. This example in no way parallels the facts of the present case. Moreover, in the present case, the agreement by plaintiffs and defendants regarding the meaning of the seniority provision necessarily involves the process of interpretation.

Finally, plaintiffs argue that allowing their tort claims to proceed would not frustrate the policy goals behind the preemption doctrine, namely uniform interpretation of CBAs. Because the parties agree over how to interpret the seniority provision, there is no opportunity for inconsistent state law based interpretation of the agreement, plaintiffs argue. Plaintiffs' argument has merit, but Eleventh Circuit case law convinces the court that its hands are tied given the circumstances presently under consideration. *See Darden v.*

*United States Steel Corp.*, 830 F.2d 1116, 1118 - 20 (11th Cir. 1987)(finding plaintiffs' false representation and conspiracy claims, among others, were preempted pursuant to § 301 where the employer's alleged misrepresentations occurred prior to plaintiffs' recall, but plaintiffs were covered under a collective bargaining agreement at the time of the alleged misrepresentations)(distinguishing cases such as *Varnum v. Nu-Car Carriers, Inc.*, 804 F.2d 639, 640 (11th Cir. 1986), *cert. denied*, 481 U.S. 1049, 107 S. Ct. 2181 (1987), where the plaintiff was not covered by a collective bargaining agreement at the time of the alleged misrepresentations). Because plaintiffs have alleged no breach of contract claims which this court might analyze pursuant to § 301, their state law claims must be dismissed as preempted.

## V. DUTY OF FAIR REPRESENTATION CLAIM

A labor union has a duty to fairly represent its members. *Parker v. Connors Steel Co.*, 855 F.2d 1510, 1519 (11th Cir. 1988) (citations omitted). Plaintiffs argue that the Union here breached its duty of fair representation ("DFR") by: 1) arbitrarily failing to inform them about the 1995 MOU, and 2) arbitrarily failing to pursue their grievance over the seniority issue.

## A. Contract Negotiations

> [T]he duty of fair representation in the context
> of negotiations may be determined by a different
> standard than is the duty owed in the processing of
> grievances or ratification of the concession
> agreements.  A violation of the Union's duty of fair
> representation in the context of negotiations with the
> Company is established if the Union's conduct in
> negotiations is arbitrary, irrational, or undertaken in
> bad faith....  "A major responsibility of negotiators
> is to weigh the relative advantages and disadvantages
> of differing proposals.... A wide range of
> reasonableness must be allowed a statutory bargaining
> representative in serving the unit it represents,
> subject always to complete good faith and honesty of
> purpose in the exercise of its discretion."

*Id.* at 1519 - 20 (emphasis supplied).  Plaintiffs have failed to

produce any evidence that the Union acted arbitrarily or outside

a "wide range of reasonableness" when it allowed the company to

disseminate the information about plaintiffs' recall and

seniority rights.  This court recognizes "that in an appropriate

case a fair representation claim may be stated against a union

for misrepresenting the terms of an agreement to its membership

...."  *Id.* at 1521.  However, here the Union did not draft or

disseminate the letter which contained the alleged

misrepresentations.  *Doc. 61*, Ex. 5 at pg. 16.  Instead, the

Union disseminated the 1995 MOU to its local presidents.  While

there is no evidence that the local presidents actually mailed

the 1995 MOU to the members or posted the MOU at each local union

hall, at most such conduct constitutes negligence which "is not

enough to sustain a claim for breach of the duty of fair representation in any context." *Id.* at 1521 (citations omitted).


## B. Grievance Processing

> In the context of grievance processing, in order
> to establish that the union has breached its duty of
> fair representation the employee must show that the
> union's handling of the grievance was either arbitrary,
> discriminatory, or done in bad faith. An example would
> be when a union arbitrarily ignores a meritorious
> grievance or is perfunctory in its processing of the
> grievance.

*Id.* at 1520. Here there is no evidence that the Union acted

arbitrarily. Plaintiffs admit that they are not entitled to

their Mulga date-of-hire for purposes of establishing their

seniority at the present mine. *Doc. 61.*, Pls.' Br. at pg 9.

Therefore, the Union could not have acted arbitrarily when it

decided that it could not successfully pursue a grievance over

the seniority issues. Consequently, plaintiffs' DFR claim also

fails.


## VI. CONCLUSION

This court agrees that Drummond's letter was not the model

of clarity. Indeed, the court keeps its mind open to the real

possibility that this lack of clarity was intentional. However,

given United States Supreme Court precedent and Eleventh Circuit

precedent, a simple lack of clarity, deliberate or not, does not avoid preemption.

A separate, appropriate order will be entered.

DONE this 20ᵗʰ day of August, 1998.

WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE